Illene **BIRKLAND**, Elmer
Stubblefield, Plaintiffs,

v.

**ROTARY PLAZA, INC.**, et al.,
Defendants.

No. C–84–2026 SW.

United States District Court,
N.D. California.

Aug. 7, 1986.

Steven Zieff, Carmen Flores, Legal Aid Soc. of San Mateo County, Redwood City, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., Patrick R.S. Bupara, Chief, Civ. Div., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., Howard M. Schmeltzer, Sp. Asst. to the Associate General Counsel, Jonathan Strong, Office of General Counsel, U.S. Dept. of Housing and Urban Development, Washington, D.C., for Federal defendants.

Allan M. Berland, San Francisco, Cal., for Rotary Plaza, Inc., and Eugene Burger Management Corp.

### ORDER AND MEMORANDUM OF LAW AWARDING ATTORNEYS' FEES AND COSTS

SPENCER WILLIAMS, District Judge.

Plaintiffs have moved for attorneys' fees and costs in this case, which involves mandatory meal programs for elderly residents of federally subsidized housing projects. On August 23, 1985, this court found that the mandatory meal policy of the United States Department of Housing and Urban Development (HUD), found in HUD Handbook 4350.3 §§ 3–14 and 4–13 (1981), was adopted in violation of the publication requirement of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and in violation of the notice and comment requirements of the Administrative Procedure Act (APA) as required by 24 C.F.R. Part 10 and 5 U.S.C. § 553. On January 10, 1986, this court granted declaratory and injunctive relief which ordered, *inter alia*, that an interim meal policy be published in the Federal Register; that the meal policy cease to be mandatory after February 1, 1987, if HUD fails to promulgate a fully compliant policy by that date; and that plaintiffs be exempt from meal charges until it is determined whether they qualify for new exemptions spelled out in this court's order of January 10, 1986. Plaintiffs request $95,343.77 in fees and $3,856.94 in costs under both the

FOIA and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).

## AVAILABILITY OF FEES UNDER THE FREEDOM OF INFORMATION ACT

■ Under the FOIA, the court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The plain language thus indicates that the district court has discretion to assess fees for the causes of action involving the FOIA and APA. There is some precedent for such awards under the FOIA. This court notes that in *Anderson v. Butz*, CS–75 401 TJM (E.D.Cal., April 7, 1980), Judge MacBride awarded fees and costs to plaintiffs who successfully challenged a food stamp policy under the publication requirements of 5 U.S.C. § 552(a)(1).

In addition to the plain meaning of the statute, it is important to look at the legislative history of an attorneys' fees provision, since specific congressional intent is required to authorize fee awards. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 544 L.Ed.2d 141 (1978). In debate over the FOIA fees provision, both houses of Congress talked in terms of providing fees for litigants who forced the government to release documents. Source Book: Freedom of Information Act and Amendments of 1974 ("Source Book") at 236, 267, 302. However, this court has seen no legislative history in which members of Congress indicated an intent *not* to allow fees for litigants who force the publication of documents.

The intent of Congress becomes clear in the 1974 amendments to the FOIA. In the House version of the 1974 amendments, the judicial review and attorneys' fees provisions originally had been written as part of the subpart dealing with forcing the release of government documents, and there was some confusion as to whether the judicial review provisions were thus meant to apply only to that portion of the statute (subpart (a)(3)) and not to the publication requirement at issue here (subpart (a)(1)). H.R. 93–876, 93rd Cong., 2d Sess (1974), U.S.Code Cong. & Admin.News 1974, p. 6267, Source Book at 147. Specifically to clear up that ambiguity, a Senate amendment moved the judicial review and fees provisions out of subpart (a)(3). The Senate bill emphasized that by making the structural change of moving the judicial review provision into a separate subpart, it meant to clarify that the judicial review provisions would apply to requests under *all* subparts, not just the one dealing with release of government documents. Source Book at 161. This amendment was adopted by the conference committee. Source Book at 226–27.

Since Congress's intent in placing the judicial review provision into a separate subpart was to emphasize that judicial review was not exclusively tied to the release-of-documents provision, then it is reasonable to conclude that congressional intent in simultaneously moving the attorney's fees provision into another portion of that subpart was, similarly, to show that fees are available, as the plain language says, for "any case under this section." Furthermore, if the judicial review provisions apply to all subparts of the FOIA, then it is logical that the attorneys' fees provisions should likewise apply.

Three years ago, in *Guam Contractors Ass'n v. U.S. Dept. of Labor*, 570 F.Supp. 163 (N.D.Cal.1983), this court interpreted the fee provision narrowly and pointed out that "only those efforts dedicated to disclose information contained in illegally withheld documents are properly addressed in a § 552(a)(4)(E) [attorneys' fees] request." *Id.* at 168. However, that case concerned only a disclosure of government documents, not a publication requirement. In *Guam Contractors*, this court concluded that for a plaintiff to qualify for attorneys' fees under the FOIA, the public must be benefitted by the resulting *disclosure* itself, and it is not sufficient if the public benefits only by a later *attack* on whatever government action was exposed by the dis-

closure. That idea is consistent with an award of attorneys' fees in the instant case, since this court finds that the public was benefitted by the publication of the mandatory meals plan in the Federal Register and by the order that any long-term mandatory meal plan must be promulgated in compliance with the publication requirements of the FOIA and APA.

The government cites dicta in *Nichols v. Pierce*, 740 F.2d 1249 (D.C.Cir.1984) to show that courts should not allow fees for publication cases under FOIA. *Nichols* is inapposite because its plaintiff never brought a cause of action under the FOIA. Thus this court concludes that attorneys' fees are available for publication-type cases under the FOIA. The next step is to determine whether plaintiffs substantially prevailed in their litigation.

■ There is a two-part test for determining whether a party is the prevailing party: (1) Did plaintiffs accomplish, by means of the suit, what the suit sought to accomplish? (2) Was there a legal basis for the plaintiffs' claim (i.e., was defendant's conduct required by law and not merely gratuitous)? *Cal. Ass'n of Physical Handicapped v. F.C.C.*, 721 F.2d 667, 672 (9th Cir.1983). This court held in *Guam Contractors*, 570 F.Supp. at 165, that a favorable final judgment is not an absolute prerequisite to an award of fees. In the instant case, the purpose of the lawsuit was "to have the court declare as unlawful and to enjoin the maintenance of" the mandatory meal plan. Since this court declared that the plan was adopted in violation of the FOIA and APA, ordered that meals cannot remain mandatory unless a new plan is promulgated in compliance with the publication and public-comment requirements of the FOIA and APA, and exempted plaintiffs from the current meal plan pending determination of their status under newly-ordered exemptions, the first part of the test has been met.

Defendants argue that since they "volunteered" to publish the plan in the federal register, their action was gratuitous and thus plaintiffs do not meet the second part

of the test. This court concludes that publication of the plan was not gratuitous. In addition, regardless of whether the publication of the current plan was offered by the government, that publication was only part of the relief described above. Thus plaintiffs have substantially prevailed in their suit.

## APPROPRIATENESS OF A FEE AWARD

■ There are four factors this court must consider to determine whether an award of fees and costs is appropriate under the FOIA. *Church of Scientology v. U.S. Postal Service*, 700 F.2d 486, 492 (9th Cir.1983). Those factors are: (1) benefit to the public; (2) commercial benefit to plaintiff; (3) nature of the plaintiff's interest; and (4) whether the government's position had a reasonable basis in law. *Id.*

■ The media publicity of this case attests to the degree of dissemination and public impact of rulings obtained by plaintiffs. Under this court's order, defendants issued notices of a revised interim policy to all regional, area and field offices with responsibility for administering, overseeing or managing programs under Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1. The offices were ordered to mail written instructions to all owners of Section 236 projects, requiring them to revise their meal services to comply with the interim policy and to post the instructions in tenants' common areas. There is no question of a strong public benefit in this case.

Furthermore, plaintiffs are not a corporation attempting to increase profits. They are elderly and financially strapped people who are fighting a mandatory meal policy that they say they do not need and cannot afford, and which was wrongly implemented without publication or public comment.

The government's position in this case— generally, that the policy was not a "substantive rule" within the meaning of the FOIA and APA and thus not subject to publication requirements—had an arguable

basis in law and may even be seen as reasonable. However, even if the government's position is reasonable, a fee award should not be denied if other applicable criteria support a fee award, as they strongly do in this case. *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1366 (D.C.Cir.1977).

## AVAILABILITY OF FEES UNDER THE EAJA

Under 28 U.S.C. § 2412 the prevailing party may recover reasonable fees plus costs from the United States unless the district court finds that the position of the United States was substantially justified, both in law and fact, or that special circumstances make an award unjust. This court concludes that the government has not met its burden of showing that its position was justified in fact. All that the government has said on this point is that mandatory meal programs often serve a good purpose, and of that this court has no doubt. The government has not shown, for instance, that it would have been a great hardship for HUD to have published and elicited public comment on the meal policy before adopting it. Thus plaintiffs are entitled to fees and costs under the EAJA as well as the FOIA.

## AMOUNT OF FEES

Fees shall be awarded on the FOIA and APA claims in this case, and not on plaintiffs' unsuccessful claims. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Similarly, this court will reduce by 75% the costs and amount of time plaintiffs have claimed for work on discovery, since most discovery efforts were directed at unsuccessful claims. Furthermore, plaintiffs shall not be compensated specifically for time spent preparing motions requesting fees. This court considers such efforts to be part of the general cost of doing business and thus views them as being compensated through the basic hourly rate. Finally, plaintiffs' compensable hours shall be reduced to eliminate time spent working solely against private defendants. On the other hand, plaintiffs shall receive compensation for time spent in settlement discussions, since the court wishes to encourage settlement efforts in all cases.

Under the FOIA, this court should award plaintiffs an hourly rate equivalent to the market rate for an attorney of similar skill. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Evidence shows that market hourly rates for attorneys who worked on this case are as follows: Steven Zieff, $115; Carmen Flores, $110; Peter Reid, $150; Brian Newcomb, $125. This court chooses to multiply those lodestar rates by 1.05 mostly to reflect the exceptional success of plaintiffs in making meal policies more responsive to the needs and desires of elderly residents in subsidized housing nationwide. *LaDuke v. Nelson,* 762 F.2d 1318, 1332 (9th Cir. 1985); *Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985). The multiplier is small because of the current need for fiscal restraint in government.

Compensable hours have also been adjusted to reflect this court's view of the number of hours that are reasonable for work done on the successful claims. In total, then, it is hereby ordered that plaintiffs receive $39,370 in attorneys' fees and $964 in costs.